Good morning, Your Honors, and may it please the Court. This is not a case about workplace exposure to COVID-19. This case involves the death of an H-2A guest worker, Marco Antonio Galvan, who was brought to the United States by his employer, Larsen Farms. After Mr. Galvan was diagnosed with COVID-19, Larsen Farms put him in a trailer on an unpaved, unnamed road in the middle of its 55,000-acre potato farm with three other sick workers and told the workers they were not to leave. They never checked on him, never took him to a doctor, and never did anything else to assist Mr. Galvan as his symptoms worsened. And sadly but not surprisingly, that's where he died. But the issues before this Court today are simply whether the Texas Pandemic Liability Protection Act, the PLPA, applies to his survivor's suit for the employer's conduct after Mr. Galvan had already contracted COVID-19, and second, whether the District Court had jurisdiction to determine whether his death was, legally speaking, a work-related injury. And even if it did, whether the District Court properly granted summary judgment based on affirmative defense that the defendant employer did not prove. To turn to the first issue, the PLPA simply does not apply to this case. Because the PLPA does not protect employers from liability other than for, quote, exposing a person to a pandemic disease, the opinion below impermissibly expanded the scope of this statute to create law that the legislature did not enact, and that is reversible error. And we know that the PLPA does not grant liability protection to an employer's conduct after the onset of COVID-19 for two reasons. First, because the language of the provision the defendant relies on, the language this Court just examined in Johnson v. Tyson Foods, simply does not address post-exposure conduct. But second, because the legislature knew how to exempt an employer's post-exposure conduct from liability, and it did not do that in these circumstances. And this is not speculative. The legislature did, in fact, exempt certain post-exposure conduct when it created an affirmative defense for medical professionals in a pandemic situation. And you'll find this not in the brief itself, but in the bill analysis, which is cited in footnotes one and three of plaintiff's opening brief, and codified in the Texas Civil Practicing Remedies Code at section 74.155B. Can I ask, I mean, I frankly, I find the language here of the statute difficult to parse. So, it starts, Part A says, a person is not liable for injury or death caused by exposing an individual to a pandemic disease. So, that's sort of the major premise. You're not liable for doing this. Now, the employer here arguably caused Mr. Galvan's death by exposing him to a pandemic disease. Isn't that at least, isn't that sort of true at the outset? It certainly could be. It doesn't matter. I mean, I understand you say the allegations are, and then they omitted a lot of other things after that, and they didn't, they did all kind of bad things after that. But at the outset, arguably, the death has been caused by exposing him to a pandemic disease. And then the statute goes on and says, you can't be liable for that unless the claimant establishes certain things about the nature of the exposure, et cetera, et cetera. So, I'm just, I'm frankly struggling with how that language applies to this case. And I think the district court, I mean, the district court obviously was too. So, I'm not sure. I mean, are there other principles in Texas law that say, you must read this very narrowly, you must read this broadly? How am I going to go about figuring out how broadly to read the terms of the statute? Well, unfortunately, because this is a relatively new statute, we don't have the benefit of a great body of interpretive case law analyzing this particular statute. Shouldn't, doesn't, shouldn't that lead us to certify this to the Texas Supreme Court then? Because, I mean, we're, what we say about this statute obviously isn't going to bind anybody in Texas except the parties. That certainly would be this court's prerogative, Your Honor. Something we would point out is that the section of the PLPA on which the defendant relies limits an actor's liability, as you said, for exposing someone to a pandemic disease. And that section is, where it's codified, is entitled liability for causing exposure to pandemic disease. And every single requirement in that section, requirements this court just confronted in Johnson, squarely involves some form of a failure to prevent or to minimize that exposure. The Johnson opinion just confirms that the PLPA has nothing to say about what happens after someone is already sick. And this court in Johnson emphasizes repeatedly that the PLPA requires allegations about the defendant's conduct before and up to the time of exposure. And when it comes to adequately pleading a PLPA claim, those are the allegations that the court examines. But in this case, unlike Johnson, as you said, plaintiff's theory of liability is not about what the employer might have done to expose Mr. Galvan to COVID-19. It's about what the employer did afterwards. This injury or death caused by exposing. It does, Your Honor. And I certainly understand why. It really is irrespective what happens afterwards. I mean, you know, a person could have been exposed in the workplace and then gone back to Mexico immediately and died. And then arguably, there would be no liability here. Right. Well, under those circumstances, certainly there would be no employer for whoever exposed him to COVID-19. But the question from the plaintiff's perspective is what comes after that. So when he went back to Mexico, was there a horrific traffic accident? Was he was something done such that he was prevented from getting to medical care? And whether there are certainly attenuation circumstances. But the way the district court treated this was a failure of proof. In other words, he interpreted the statute to say, as Judge Duncan may be doing, although with more nuance than I have, is not liable for injury. The company is not liable for injury or death caused by exposing. And it really doesn't matter what happens thereafter, arguably, unless the plaintiff establishes that and you have all these limitations on exposure that the company failed to warn, had control over the condition, knew the individual would come into contact, had a reasonable ability to remediate, failed to comply with government protocols. And the way Judge Kosmary treats it, I think summary judgment and plaintiff offered no evidence about any of that. The thing we would bring to this court's attention about that, Your Honor, was that the grounds on which the district court granted summary judgment were not the grounds that were presented in defendant's motion. In defendant's motion for summary judgment, it moved for summary judgment on the workers compensation exclusive remedy defense issue and on the PLPA issue. And particularly with regard to the PLPA issue, it made only a pleadings argument. It fundamentally argued that the pleadings in this case, that the causes of action plaintiffs allege, are not cognizable under Texas law after the enactment of the PLPA. This is in the record on appeal at, pardon me, 248, that plaintiff's claims are summarily barred under state law. And so anything the district court did to bring evidence into the record, it never notified the parties of its intent to do that. And those were the grounds for plaintiff's motion for reconsideration. The third thing to bring to the court's attention about this, pardon me, is that if the legislature wanted to extend liability protection to an employer's subsequent acts or omissions, it could have done that. And in fact, it did that with regard to medical professionals because the PLPA and Senate Article 6 did not only create this chapter, Chapter 148 of the Civil Practice and Remedies Code, the chapter that limits liability for exposing someone to COVID. It also added an affirmative defense for medical professionals, and that affirmative defense applies even after exposure. And so if defendants and the district court's reading of Section 148.003, which is the provision that's at issue here, if their reading were correct, then this other provision in I confess I haven't read the provision about medical providers. What is the nature of the affirmative defense for a medical provider? To quote that, Your Honor, the statute says a health care provider is not liable for an injury or death arising from care, treatment, or failure to provide care or treatment relating to or impacted by a pandemic disease. And it goes on to say if the provider establishes these certain elements. That's for patients then, right? I haven't given a great deal of thought to who that would apply to, but I would imagine so, Your Honor. The idea, I'm just thinking, the idea would be I'm suing a provider for failure to give care to a COVID patient, right? And the statute is saying, well, there's an affirmative defense to that for the medical provider if certain things are, I think that's the idea. I believe so, Your Honor, but the reason this is relevant to this case is that the legislature clearly knew how to exempt conduct that occurs after someone has already become sick with COVID-19. And so this court must read that provision in conjunction with the provision that defendant has brought before this court. Well, imagine that a doctor commits medical malpractice on a COVID patient, right? Would we read 148.003 to bar that claim altogether because the death was in some sense caused by COVID? Plaintiffs would argue that that's absolutely not how that should be read because the more specific provision, the medical malpractice provision would apply in that instance. And the court, pardon me, the legislature clearly intended these to be read together. They were passed in the same exact piece of legislation. They were considered together. And so it was clearly within the legislature's plan for this specific defense that's before this court to bar liability for exposing, but not for acts that come after that. And in fact, of all the cases that are pending in the federal district courts in Texas or before this court, this is the only case that we know of where the plaintiffs have alleged liability on the basis of those post-exposure acts or omissions. Because it's unusual facts. I mean, I don't want to tell you what to talk about, but I do hope you get to your work-related injury point because I... Okay. And absolutely, Your Honor, they are unusual facts. And we think that it is rare that an employer will have a legal duty as it did in this instance towards someone who was already sick. And that is why this court will not see many, if any, more of these cases. Oh, that's not true. I mean, we know that COVID was going through the meatpacking plants at a rapid rate. So there's a reason why Rio Grande Legal Aid is here because there are other people who are potentially... And not to deny that it's very unfortunate if people die because of COVID. But this was a rampant problem in the places that had to stay open. Certainly, Your Honor. But the distinguishing thing about Johnson v. Tyson Foods and all of the other meatpacking plant cases is that those plaintiffs have squarely pleaded causes of action based on their exposure to COVID-19. And in fact, in the opinion of Johnson, there's a... You could have misled me in starting off your brief about exposure. Said this was in... Emphasizing this was in the sorting shed or something. He had to work in the sorting shed. Well, that made me think, well, it's some confined space. It's possible he was exposed to COVID there, if that's what Your Honor is getting to. That's a possibility. But for the theories of liability in this case, it's irrelevant how, when, and where he got COVID because what matters is what came next. The district court essentially held that so long as exposure to COVID is one cause of an employee's injury, then the employer's liability is limited for any act after that exposure that also causes the injury. And in doing so, the district court failed to recognize a very basic principle of tort law, which is that there can be more than one proximate cause. And Judge Jones, as you just alluded to with the example of a traffic accident caused by tax in the road and then hitting a pole, there can be multiple proximate causes of this injury as well. And in fact, in 1925, the San Antonio Court of Appeals recognized this when it held that an employer's negligence in failing to care for a railroad worker who had already contracted smallpox and for whom that employer had assumed his care by affirmatively placing him in a train car by himself, that employer's conduct was a proximate cause of the worker's death in addition to smallpox itself. And that employer was still liable for its conduct. And this case is no different. Even if Mr. Galvan has no claim against Larson Farms, which we'll willingly concede, related to his exposure to COVID, his claims for acts and omissions by this defendant after he contracted COVID-19 remain actionable. Plaintiffs have adequately pled liability based on their acts and omissions subsequent to and legally unrelated to however Mr. Galvan got COVID-19. And the district court erred by holding that the PLPA applied to those claims and in granting summary judgment for the employer on that ground. So basically, you're saying the PLPA, I think we have to assume that he was, well, this gets into work-related. So you didn't touch on that yet, right? I was hoping to come back to that on rebuttal, Your Honor, since I see I only have about 20 seconds. All right, you can take that up on rebuttal. And if you don't mind, I'll just ask you this. What you would be doing, it seems to me, is basically cutting off half of the intent of the legislature to protect employers during the pandemic emergency. Because what you are arguing is a matter of pleading. There can be no dispute here that Galvan, Mr. Garp, I'm sorry. Galvan, that's right, Your Honor. Yeah, I'm sorry. Rodriguez was exposed because of his employment. There can be no argument about that. He was on a 55,000-acre ranch working in a potato farm. So he was exposed. But what you're saying is the employer becomes responsible for what happens thereafter, right? I mean, that really cuts off a broad swath of the immunity of employers, doesn't it? We would argue that it doesn't, Your Honor, because again, the legal duties in this case are extremely specific to these factual circumstances. And in fact, the trial court asked for a specific briefing on this issue. And that's in the record on appeal beginning at page 755. But just to keep this brief since I'm out of time.  Because these cases are based on extremely rare and extremely specific factual circumstances. Specific to the fact that he was a worker imported under the H-2A program and that the employer affirmatively moved him to quarantine housing and told him not to leave. Thank you. Okay, thank you. We'll get to the other issue on rebuttal. Next, we have Ms. Dallas. To be honest with you, I didn't know well, except that I've seen him at HEB. I didn't know we had 55,000 acre potato farms. I didn't until I had this case either, Your Honor. May it please the court. The district court's judgment should be affirmed for three reasons. First, the Pandemic Liability Protection Act's broad liability protections foreclosed Blaine Larson Farms' liability on the claims raised by Ms. Garcia Rodriguez. Because she did not plead or raise an issue of material fact on whether Blaine Larson Farms knowingly failed to warn or remediate a condition that the defendant knew was likely to result in exposure to COVID-19, knowingly failed to implement or comply with government standards. And she did not show that reliable scientific evidence demonstrates that Blaine Larson Farms' actions were the cause and effect of Mr. Galvan's contracting COVID-19. Instead, even while admitting that Galvan's death was proximately caused by exposure to COVID-19, she took the position that the PLPA does not apply because her claims also arise from post-exposure conduct. Well, so again, I'm honestly struggling with how to read this statute because yes, I think everybody ought to agree that the death here in a real way was caused by COVID-19. There's just no question about it. And if that was all that the statute said, well, no liability for exposure to COVID-19 by an employer. Okay, that's a very broad statute. But the statute here goes on to require findings about, you know, that the person who exposed didn't warn, didn't remediate the condition that resulted in exposure, didn't do a number of things related to the exposure. And what I hear the counsel on the other side saying is that our case really doesn't have anything to do with that. We would have no reason to plead a failure to remediate a condition because what we're concerned about is what happened afterwards, being confined to a quarantine shed, not being given the requisite amount of care. The statute just seems to be a mismatch for these allegations. How would you respond? Your Honor, first, I want to point out that I'm frankly surprised by the argument made by my friend that this case is not about exposure. Their pleadings clearly reflect and raise issues related to the failure to warn, the failure to remedy certain conditions. Okay, fair enough, fair enough. Maybe we could say about those, maybe those are clearly excluded by the statute. What about the other ones? And, Your Honor, in response to the summary judgment, their evidence does not show that Mr. Galvan got any treatment that was inconsistent with the treatment available for a person who contracted COVID-19 in July of 2020. But that's a different argument than that the statute bars those claims, right? You're not wrong. I do just want to point out that the factual record does not support the idea that Mr. Galvan was mistreated by being quarantined. He was taken to, he was taken to a clinic that recommended him, him staying on the property and being kept with other workers who were sick. No, your point is well taken and I don't mean to suggest otherwise. I'm just concerned about how the statute applies. And, Your Honor, I understand the concern that it appears that the statute may prescribe or bar certain claims that are, that involve slightly different allegations related to something that's not quite exposure. Take my medical malpractice example. A doctor is, somebody comes in with COVID already and the doctor does something that's clearly violates the standard of care for a doctor in treating it. Could the doctor claim that the statute bars liability because the injury or death was caused by exposing an individual to a pandemic disease? Your Honor, I think all of these questions are really difficult questions. I don't, I don't disagree with the court there. I will point out to our briefing where we discussed the, the bill analysis for this, for this statute and, and the legislature's recognition that rights people believe they might have had prior to the pandemic with respect to certain claims are going to be curtailed. That was the point. Because everybody was in a difficult spot. Because it would be barred by the workers' comp statute in any event, right? What happened after his quote exposure? Your Honor, that's correct. It really doesn't matter. That's correct. In this case, even if the court were to not find that the PLPA prescribes this claim because of the failure of proof by the appellants, the, the workers' comp exclusive remedy defense certainly does. And we believe that the district court correctly held that the negligence, negligent entrustment and breach of contract claims were barred by the exclusive remedy provision of the Texas Workers' Compensation Act. Explain to me, I understand your argument on that, I think, but explain to me when he applied for, his spouse applied for workers' compensation, correct? With the carrier, yes. With the carrier and it was denied?  Workers' compensation benefits based on, and, and let me, I can find the, um, the citation for the court, but based on the, um, information that was provided, there was a question about was he exposed at work? Um, was it work related? And so the carrier denied compensation. There's no evidence in the record of any proceedings with the TWC, um, related to a compensability determination. What was undisputed is that Galvan was Blaine Larson Farms' employee, um, that Blaine Larson Farms was a Workers' Comp subscriber, and that the plaintiff's allegations all related to his exposure at work, and, and I do think it's, it's useful to point the court to those allegations. Um, at record, um, 20, 21, 23 to 25, um, the plaintiff pleads that there was a, a failure, um, to properly train him, a failure to, um, sufficiently, um, train on safety and, and prevention of spreading COVID-19, failure to maintain the workplace in a safe condition, et cetera. And I think all of those, um, all of those pleadings acknowledge, or all of those pleading allegations acknowledge that this is a, this is an injury that is. Did he file for, um, um, you know, wrong, wrongful death or recovery under the Workers' Comp law? Um, Your Honor, that is not in, in this record. Um, I, I'm on, I'm. You can take judicial notice. I'm, I'm not sure of the status of that, and so I, I don't want to make a representation. Um, one way or the other. At the time of all of this briefing, no. Um, yeah. Um. Well, I mean, so the denial of coverage though by the carrier was, as I understand it from the record, was, um, he had not sustained a compensable injury in the course and scope of employment in the form of an occupational disease as defined by the Workers' Compensation Act. That's, that's what I see in the record about why his coverage was denied. Your Honor, that's a piece of it. I think the other piece of it was that Mr. Galvan, um, had COVID, was in the quarantine shed and suffered some sort of cardiac incident. So there's also the, the element of, um, potentially not having a compensable injury due to the, due to the heart condition. Because that sent me to the labor code to look at the definition of what is an occupational disease, and it excludes, quote, an ordinary disease of life to which the general public is exposed outside of employment unless that disease is an incident to a compensable injury or occupational disease. I'm just trying to figure out the, the relevance of these definitions. Why was he denied? Your Honor, I, I would submit it doesn't really matter. Um, the issue with respect to, um, whether we are entitled to the exclusive remedy defense doesn't turn on the compensability question. And there are a couple of cases cited in our brief Texas cases, uh, in particular the Medrano case that really, um, I think well explain how those are, those issues may involve related questions of fact or, or related factual discussions, but are, are really separate issues that need to be, need to be . . . I read that in your brief. I mean, I mean, so this is, maybe you're going to tell me that this is irrelevant, but this is somewhat similar to our OSHA vaccine case where we said, all right, well, is COVID an, is COVID a work-related disease for purposes of the OSHA Act? And Judge Jones and I were on a panel that said, well, no, it's not. Uh, and the Supreme Court affirmed us on that. So here we have COVID and we're asking, is it a work-related injury? So did you see the sort of parallels there? I understand it's a different set of laws, state versus federal, but . . . And I confess I'm a little bit, um, unfamiliar with this, this OSHA decision. Um, but when we're discussing the issue of work-related injury here, I think what we're looking to exclusively is, did they think, do they say it was work-related? And she acknowledged that it was. So if you're talking about the three elements that are required to establish the exclusive the district court could properly dismiss, um, dismiss those claims based on the workers, um, based on the exclusive remedy defense under the workers' compensation statute. I briefly do want to, um, go back to address, um, the PLPA unless the court has any question, any further questions on the workers' compensation issue. Um, so there was a discussion in, in the appellant's portion about the text of the PLPA and, um, whether the legislature could have been more specific. Okay. Fair question. Um, the legislature could have been more specific. They could have said a person is not liable for injury or death caused solely by exposing. And they didn't. They said caused by exposing an individual to a pandemic disease during a pandemic, pandemic emergency, unless, you know, a knowing violation is established. And I think that that the plain text, uh, imposes substantive requirements that are clearly at issue here, um, because of plaintiff's allegations about exposure, plaintiff's allegations about, um, safety equipment to avoid the exposure. Um, just comparing the plain text of the statute to the plaintiff's pleadings, it's clear that Garcia's claim arises from injury or death caused by exposure. And she actually concedes that, um, in her briefing at page 32, where she writes, Galvan died of COVID-19. So his death was approximately caused by being exposed to COVID-19. The idea that through creative pleading or tacking on an additional allegation that something related to how Mr. Galvan was treated after the death would remove this case from the PLPA is not supported by the plain language of the statute, and it is not supported or not, um, by the purpose of the statute. Plaintiff cannot point to an aspect of the injury, Mr. Galvan's death, that was solely the result of Blaine Larson's farm's post-exposure conduct. Um, and so for that reason, I think the plaintiff was bound to have pleadings that conformed with the requirements of the PLPA and ultimately in response to the summary judgment motion have, have proof of that. Um, I, I also do want to point out, um, on, on the sort of procedural aspect and the argument that they did not have notice that the court was going, that the district court was going to grant summary judgment based on their failure to raise, um, sufficient facts to support a PLPA claim. The motion for summary judgment, the defendants filed clearly says your claims are barred by the PLPA. Okay. Okay. At that point, um, this court's discussion of the summary judgment standard required the plaintiffs to come back with evidence that raised an issue of material fact and, and they didn't. They just said it didn't apply. Um, and, and so I don't think that the district court erred at all in, um, in dismissing the case on, on the PLP grounds. I think what they're, I mean, maybe I misunderstand what you're saying, but, um, they're saying that you only made, you didn't make a fact-based summary judgment motion. You, maybe you couldn't have. Uh, you argued that, uh, your ex, your, your client is protected fully by the PLPA and they said they thought that was a legal argument and all they had to respond was with another legal argument and not, uh, this other, the, uh, rebutting the, uh, exceptions. It may well be a legal argument, but it's a legal argument where it was their burden at that point to come forward with evidence to show that the PLPA didn't bar their claim. Um. You mean, you mean come forward with evidence that say the employer failed to warn, that sort of thing, under the, under the subparts of the statute? That's correct, Your Honor. Or that it, the PLPA was somehow otherwise inapplicable because of some other fact, but they didn't do that. Um, I'm not suggesting that, that there's never a scenario where, um, an injury or death starts with exposure and, um, no other, there's some sort of, there couldn't be some sort of intervening or superseding cause. Something happens down the line. Like a car accident or, or something like that. Um, but if that was the case, then they needed to come forward then with evidence that took the case out of, out of the requirements of the PLPA and they didn't do that. Um, one, one final point I did want to address, um, is the argument that they should have been, um, granted leave. And I think this Court's, um, although under the Rule 15 standard, this Court's decision, recent decision in Johnson versus Tyson, a different panel of this Court, um, but we provided that, a supplemental briefing, uh, last week, is, is instructive. So the Court there said, you know, if you've got a, a bare, a bare request for leave to amend, you don't support it with what, what factual allegations you would assert. Um, you know, you don't explain, um, why you could avoid the outcome. There is going to be no error in the, in the District Court's refusal to deny, um, a leave to amend. Johnson is helpful here, um, as well as the, this Court's author, um, this Court's, um, decisions in the Wagoneer case cited in our brief, as well as, um, the Patrick versus Walmart, um, case cited in our brief, um, and rules, and based on Rule 16 because of the failure to show good cause. So, Your Honor, for those, um, Your Honors, for those three reasons, we, we would ask the Court to affirm the District Court's dismissal of this case. Okay. Thank you very much. Thank you. Um, Ms. Mitchell? So the exclusive remedy defense exists to prevent lawsuits against employers who subscribe to a workers' compensation program for an employee who suffers a work-related injury or death. And that's the statutory language, work-related. And the statute uses that qualifier because the legislature didn't want to throw workers out of court for an injury not covered in the workers' compensation system. And this inquiry of whether an injury is work-related is the same question when determining if the injury is compensable in workers' compensation and when determining whether the exclusive remedy defense applies. And there are two errors in the District Court's grant of summary judgment based on just this element of the exclusive remedy defense, the only element at issue. But either of those errors by itself supports reversal. So first, the District Court lacked subject matter jurisdiction to make that determination in the first place because the Texas legislature has vested the exclusive jurisdiction to make that call in the division of workers' compensation. And that process has not concluded. And the second is that even if the court properly assumed jurisdiction to determine work-relatedness— Did your client file—did his family file a workers' comp claim? Yes, Your Honor. As was alluded to earlier, the widow filed a workers' comp claim, which was denied by a carrier. If this is not in the record, I perfectly can see that. But there is a benefits review conference, which is the next step in the workers' compensation proceeding, which is scheduled for next month. Oh, so that's still ongoing. Yes, Your Honor. So if you were to get compensation under the Texas workers' comp law, wouldn't that render this lawsuit moot? It would—pardon me. It would render the common law claims, so ordinary negligence and breach of contract, those claims would be barred by the exclusive remedy defense. However, the exclusive remedy defense specifically permits a gross negligence lawsuit in the event of a workers' work-related death. Right, I understand that. And the second is that even if the court properly assumed jurisdiction to determine work-relatedness, an affirmative defense is still a defendant's burden to plead and to prove. And the farm never conclusively proved that this death was work-related, which it must do, of course, to benefit from an affirmative defense. And not only did the farm fail to prove this, it also didn't move for summary—pardon me. It also did not move for summary judgment based on all three elements of the defense itself. And, Your Honors, we'll see this in the record. Why should it if it just cited the statute? Do you have to cite all the subsections? Because the basis for a claim is articulated in those subsections unless the defendant didn't do ABC. Since this is on the work—on the exclusive remedy defense, Your Honor, this is an affirmative defense which was moved for as actual summary judgment, not like the PLPA defense. And so it was the defendant's burden to plead and prove at summary judgment that it was that he was a covered worker, that there was a workers' compensation policy, which we don't dispute, and that this was a work-related injury, which we do dispute. And it's possible that the workers' compensation division might make that finding ultimately. But our argument here is that the district court simply acted prematurely and leapfrogged over making this inquiry—making this analysis. It did not show its work. And so first— Did the district court think you judicially admitted that it was a work— The district court did hold that. And that was based on language in our motion to remand saying that this was a workplace incident. But what the Texas Courts of Appeals decisions have said is that work-related injury is a term of art. And so the fact that someone is injured or dies at work or while going to or from work or at the employer's property does not by itself make an injury work-related. And so we cite cases in our brief that illustrate just how fact-intensive this is. And for example, there are two cases wherein a worker is injured at dinner, after hours, in a job trailer at his work site. And one of those injuries was compensable and the other was not. And again, that's because work-relatedness contemplates whether work put him where he was hurt and whether work put the thing that hurt him in his way. Now you've got yourself coming and going because your excuse for not applying the PLPA is that the employer was responsible for everything that went downhill after he was diagnosed, didn't have a truck available, didn't provide food or water, didn't, you know, get him to emergency care fast enough. And now you're saying it's not work-related? It's not that we're saying it's not work-related. We're simply saying that the district court acted prematurely to make that determination. And even if this court doesn't accept the exclusive jurisdiction argument, which is very similar to what this court has previously called primary jurisdiction in a couple of cases in 1990 and 95 that I can cite if the court would like. If I could just finish this. Well, I was, I'm sorry, but I was completely thrown off by you saying that it's currently pending before the Benefits Review Board. It's unfortunate that the district court never asked for that information and so it is not in the trial court record. Well, then we are, I mean, I think prudence would dictate that we alleviate, we remove a big part of the problem by waiting for their decision. That's exactly the argument that we're making, Your Honor. But you didn't tell anybody. You didn't tell anybody you had filed a claim. I didn't know that you had filed a claim. I'm just, I mean, that's what it is, but it's interesting. If you'd like me to respond, Your Honor? Yeah. So it is in the district court record that the claim was filed and was denied by the carrier. And it simply was never . . . They didn't know enough to know about the Benefits Review Board. That certainly seems to be the case. I used to do workers' comp cases. I know that much about it. Um, that does seem to be the case. But the thing is that this issue was never properly before the trial court in the first place. Well, it's properly before us in this sense now. Certainly, Your Honor. Okay. Thank you very much. I mean, it's a, you know, it's a questionable case. So if there's some way we can get out a part of it, why not defer? But I speak for myself only.